Judgment rendered November 20, 2019.
Application for rehearing may be filed
within the delay allowed by Art. 992,
La. C. Cr. P.

No. 53,055-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

versus

RODERICK ADAMS                          Appellant

* * * * *

Appealed from the
Fourth Judicial District Court for the
Parish of Morehouse, Louisiana
Trial Court No. 2016-723F

Honorable Clarence Wendell Manning, Judge

* * * * *

LOUISIANA APPELLATE PROJECT            Counsel for Appellant
By: Carey J. Ellis, III

RODERICK ADAMS                              Pro Se

ROBERT S. TEW                         Counsel for Appellee
District Attorney

JOHN G. SPIRES
Assistant District Attorney

* * * * *

Before WILLIAMS, GARRETT, and THOMPSON, JJ.

**WILLIAMS, C.J.**

The defendant, Roderick Adams, was charged by bill of information with armed robbery, a violation of La. R.S. 14:64, and conspiracy to commit armed robbery, a violation of La. R.S. 14:64 and 14:26.  After a jury trial, the defendant was found guilty as charged.  The trial court sentenced defendant to serve 50 years at hard labor for the armed robbery conviction and 25 years at hard labor for the conspiracy conviction.  Both sentences were imposed without benefit of parole, probation or suspension of sentence and were ordered to run concurrently.  Defendant's timely filed motion to reconsider sentence was denied.  For the following reasons, we affirm.

## FACTS

The record shows that after midnight on August 4, 2016, in Bastrop, Louisiana, three young males approached elderly Hubert Williams, ordered him to the ground at gunpoint and robbed him of his debit card and his cell phone.  Defendant was later identified as a suspect and arrested for the offense.  The following testimony was adduced at trial.

Captain Kesonya Lynch with the Bastrop Police Department ("BPD") testified that on August 4, 2016, she responded to a call of a prowler in the area of Van and Pleasant Streets in Bastrop.  Cpt. Lynch stated that when she arrived at the address of the caller, a woman pointed toward a man in the street, Hubert Williams, who said that he needed a ride home and appeared to be intoxicated.  Cpt. Lynch testified that she knew Williams as a drinker from previous contact with him and gave him a ride.  She stated that during the drive, Williams said he had been robbed by three young black men in the area of Pleasant and George Streets.  Cpt. Lynch testified that Williams told her the men had taken his cell phone and money and he described one man

as "light-skinned with dreads, a little black one and a smaller one that was a little lighter than the black one." Cpt. Lynch testified that when she returned to duty for her next shift she learned of a call about juveniles displaying a firearm at the Eden Apartments, a location which was near the scene of the Williams robbery. According to Cpt. Lynch, she went to Eden Apartments and encountered Sergeant Carl Givens, who said that the two juveniles with whom he had spoken had been released and were not present. Cpt. Lynch testified that Sgt. Givens' description of the young men matched the description of the assailants previously provided by Williams.

Sergeant Givens, also of the BPD, testified that he responded to the call regarding juveniles displaying a firearm near the office of the Eden Apartments. Sgt. Givens stated that he recognized two of the individuals as defendant and Troy Minnieweather. Sgt. Givens testified that defendant's hair was in "dreads" at that time and matched the description that Williams had given Cpt. Lynch. According to Sgt. Givens, the officers searched the area but did not locate a weapon. Sgt. Givens testified that the Eden Apartments are in close proximity to where the Williams robbery occurred and corroborated Cpt. Lynch's testimony that Williams was known as a functional alcoholic.

Minnieweather, one of the co-perpetrators, testified that he had pled guilty to conspiracy to commit the armed robbery of Williams along with Jarious Jimmerson and defendant, who had pointed a shotgun at the victim. Minnieweather stated that they took the victim's cell phone and debit card before returning to the Eden Apartments.

Hubert Williams testified that in August 2016, he was robbed by three young men after midnight as he walked on George Street. Williams stated

2

that defendant pulled a shotgun out of his pants leg, pointed the gun at his head and told him to get down on the ground. Williams testified that he was begging the men not to shoot him as they went through his pockets. He stated that the men took his cell phone, $200 in cash and his debit card and then walked away in the direction of the Eden Apartments. Williams testified that he went to a house to ask for a phone, but the owner told him to leave the property. Williams stated that when Cpt. Lynch arrived a short time later, he told her he had been robbed and needed a ride home. Williams testified that he was shown a photo lineup and identified defendant and Minnieweather as two of his assailants. Williams admitted that he has several felony convictions and has been incarcerated on several occasions.

Bastrop Police Detective Leondrio Reed testified that during the investigation of the Williams robbery, defendant gave a recorded statement admitting that he was present at the robbery with Minnieweather and Jimmerson. In the statement, which was introduced into evidence and played for the jury at trial, defendant stated that the three young men had encountered an old man walking along the street and Jimmerson pointed a gun at the victim. During the statement, defendant claimed that the only thing taken from the victim was a cell phone. Det. Reed further testified that the robbery victim, Williams, had identified defendant from a photo lineup as the assailant with the shotgun.

After the close of evidence, the jury found defendant guilty as charged of armed robbery and conspiracy to commit armed robbery. Defendant was sentenced to serve concurrent sentences of 50 years for the armed robbery conviction and 25 years for the conspiracy conviction, both without benefit of parole, probation or suspension of sentence. This appeal followed.

3

**DISCUSSION**

In his pro se brief, defendant contends the trial court erred in denying his motion for new trial. Defendant argues that the evidence was insufficient to support his convictions because no gun was recovered and the testimony of the victim lacked credibility. Defendant asserts that the victim's suggestion that he pulled a shotgun from his pants is physically impossible. He also questions the credibility of Minnieweather's testimony, arguing that Minnieweather testified in exchange for a favorable deal with the state.

When sufficiency of the evidence is raised on appeal, that issue should be addressed first because if the accused is entitled to an acquittal, then the matter is ended. *Hudson v. Louisiana*, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981); *State v. Manning*, 38,083 (La. App. 2 Cir. 3/12/04), 868 So.2d 283.

The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *State v. Tate*, 2001-1658 (La. 5/20/03), 851 So. 2d 921, *cert. denied*, 541 U.S. 905, 124 S. Ct. 1604, 158 L. Ed. 2d 248 (2004). This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. *State v. Pigford*, 2005-0477 (La. 2/22/06), 922 So. 2d 517.

The trier of fact makes credibility determinations and may accept or reject the testimony of any witness. *State v. Casey*, 99-0023 (La. 1/26/00), 775 So. 2d 1022, *cert. denied*, 531 U.S. 840, 121 S. Ct. 104, 148 L. Ed. 2d

4

62 (2000).  In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion.  *State v. Robinson*, 50,643 (La. App. 2 Cir. 6/22/16), 197 So. 3d 717, *writ denied*, 2016-1479 (La. 5/19/17), 221 So. 3d 78.  The appellate court does not assess credibility or reweigh the evidence.  *State v. Smith*, 94-3116 (La. 10/16/95), 661 So. 2d 442; *State v. Green*, 49,741 (La. App. 2 Cir. 4/15/15), 164 So.3d 331.

Direct evidence provides proof of the existence of a fact, for example, a witness's testimony that he saw or heard something.  *State v. Lilly*, 468 So. 2d 1154 (La. 1985).  Circumstantial evidence provides proof of collateral facts and circumstances, from which the existence of the main fact may be inferred according to reason and common experience.  *Id.*  When the state relies on circumstantial evidence to establish the existence of an essential element of a crime, the court must assume every fact that the evidence tends to prove and the circumstantial evidence must exclude every reasonable hypothesis of innocence.  La. R.S. 15:438; *Lilly, supra*.  The trier of fact is charged with weighing the credibility of this evidence and, on review, the same standard as in *Jackson v. Virginia* is applied, giving great deference to the fact finder's conclusions.  *State v. Green, supra*.  When the trier of fact reasonably rejects the hypothesis of innocence advanced by a defendant, the hypothesis fails, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt.  *State v. Sosa*, 2005–0213 (La. 1/19/06), 921 So. 2d 94.

Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the

witnesses, the matter is one of the weight of the evidence, not its sufficiency. *Green, supra*; *State v. Glover*, 47,311 (La. App. 2 Cir. 10/10/12), 106 So. 3d 129, *writ denied*, 2012–2667 (La. 5/24/13), 116 So. 3d 659. Such testimony alone is sufficient even where the state does not introduce medical, scientific or physical evidence. *State v. Larkins*, 51,540 (La. App. 2 Cir. 9/27/17), 243 So. 3d 1220, *writ denied*, 2017-1900 (La. 9/28/18), 253 So.3d 154.

Armed robbery is the taking of anything of value belonging to another from the person of another by use of force or intimidation, while armed with a dangerous weapon. La. R.S. 14:64. Criminal conspiracy is the agreement or combination of two or more persons for the specific purpose of committing any crime; provided that in addition to such agreement or combination, one or more of such parties does an act in furtherance of the object of the agreement. La. R.S. 14:26(A). If the intended basic crime has been consummated, the conspirators may be tried for either the conspiracy or the completed crime, and a conviction for one shall not bar prosecution for the other. La. R.S. 14:26(B). All persons involved in the commission of a crime, whether present or absent, whether they directly commit the act constituting the offense, aid and abet in its commission, or counsel or procure another to commit the crime, are principals. La. R.S. 14:24.

In his brief, defendant primarily challenges his convictions on the basis that a weapon was not recovered, that he did not admit to having a firearm in his statement to police and that Minnieweather was not credible because he received a deal to testify. However, the evidence presented amply demonstrates that defendant was a participant in the armed robbery of Williams. Even though defendant arguably did not admit to police that he was armed during the robbery, Williams identified defendant from a photo

6

lineup and during trial as the assailant with the gun. Additionally, defendant admitted in his statement, which the trial court found was freely and voluntarily given, that he participated in the robbery in which the victim's cell phone was taken from his person at gunpoint.

After hearing the witnesses and weighing their credibility, the jury reasonably accepted the victim's testimony and this Court will not disturb any credibility determinations made by the fact finder. Based upon this record, the state presented sufficient evidence to support the convictions. Thus, the assignment of error lacks merit.

*Sentencing*

Appellate counsel and defendant in his pro se brief contend the trial court erred in imposing excessive sentences. Counsel argues that the trial court placed too much emphasis on crimes with which defendant was charged but not convicted and failed to adequately consider mitigating factors, particularly that defendant was 17 years old at the time of the offense, his status as a first felony offender, his drug abuse problem and his expression of remorse. Defendant argues that the 50-year sentence without benefits violates his right to equal protection as a youthful offender by denying him a reasonable expectation of release, citing *Graham v. Florida*, 560 U.S. 48, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010), and *State ex rel. Morgan v. State*, 2015-0100 (La. 10/19/16), 217 So.3d 266.

Initially, we note that the factual situation of this case differs from that of *Morgan, supra*, in which the Louisiana Supreme Court found that the maximum 99-year sentence for armed robbery was the equivalent of a life sentence without parole imposed on a juvenile prohibited under *Graham*. Here, the maximum sentence was not imposed on this offender and there is

7

no showing that the 50-year sentence is prohibited under *Morgan* and *Graham*. Thus, defendant's argument lacks merit.

An appellate court utilizes a two-pronged test in reviewing a sentence for excessiveness. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. *State v. Smith*, 433 So. 2d 688 (La. 1983); *State v. DeBerry*, 50,501 (La. App. 2 Cir. 4/13/16), 194 So. 3d 657, *writ denied*, 2016-0959 (La. 5/1/17), 219 So. 3d 332. The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even when there has not been full compliance with Article 894.1. *State v. Lanclos*, 419 So.2d 475 (La. 1982); *State v. DeBerry, supra.* The important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of the offense, and the likelihood of rehabilitation. *State v. Jones*, 398 So. 2d 1049 (La. 1981); *State v. DeBerry, supra.* There is no requirement that specific matters be given any particular weight at sentencing. *State v. DeBerry, supra*; *State v. Shumaker*, 41,547 (La. App. 2 Cir. 12/13/06), 945 So. 2d 277, *writ denied*, 2007-0144 (La. 9/28/07), 964 So.2d 351.

Second, the appellate court must determine whether the sentence is constitutionally excessive. A sentence violates La. Const. art. I, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. *State v.*

8

*Dorthey*, 623 So. 2d 1276 (La. 1993). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. *State v. Weaver*, 2001-0467 (La. 1/15/02), 805 So. 2d 166.

The trial court has wide discretion in the imposition of sentences within the statutory limits and such sentences should not be set aside as excessive in the absence of a manifest abuse of that discretion. *State v. Williams*, 2003-3514 (La. 12/13/04), 893 So. 2d 7; *State v. Allen*, 49,642 (La. App. 2 Cir. 2/26/15), 162 So. 3d 519, *writ denied*, 2015-0608 (La. 1/25/16), 184 So. 3d 1289. A trial court is in the best position to consider the aggravating and mitigating circumstances of a particular case and therefore, is given broad discretion in sentencing. *State v. Allen, supra*. On review, an appellate court does not determine whether another sentence may have been more appropriate, but whether the trial court abused its discretion. *State v. Jackson*, 48,534 (La. App. 2 Cir. 1/15/14), 130 So. 3d 993.

The penalty for armed robbery is imprisonment for not less than 10 nor more than 99 years without benefit of parole, probation or suspension of sentence. La. R.S. 14:64(B). The penalty for conspiracy to commit armed robbery shall not exceed one half of the longest term prescribed for armed robbery. La. R.S. 14:26(D). Thus, the penalty range for conspiracy to commit armed robbery is not less than 10 nor more than 49 ½ years, without benefits.

Prior to imposing sentence in the present case, the trial court considered the guidelines of Article 894.1, the presentence investigation (PSI) report, the entire case file and all submissions to the court on defendant's behalf. While pointing out that this matter involved defendant's

9

first adult arrest and first felony conviction, the trial court noted that subsequent to the arrest in the present case, defendant had been charged with other crimes of violence, including second degree murder. Appellate counsel contends in his brief that the trial court should not have considered these subsequent charges. However, we note that the trial court previously held a hearing on defendant's traversal of the PSI report and decided the subsequent charges of murder and armed robbery could be considered at sentencing where the grand jury had returned a true bill against defendant.

Regarding the present offense, the trial court outlined the facts of the crime and referenced Williams' testimony that defendant was the assailant holding the shotgun. The court found that defendant is in need of a custodial environment provided by commitment to an institution and that a lesser sentence would deprecate the seriousness of the offense. The court stated that defendant obtained something of value through threats of violence and used a dangerous weapon in the commission of the offense.

In addition, the trial court considered defendant's social history, noting that he "stopped trying" in school after failing the sixth grade several times, he had dropped out of the eighth grade and the PSI report indicated that he does not drink alcohol, but began using drugs, including marijuana, Ecstasy and Xanax around age 12 and had never received treatment. The court noted that defendant provided a statement in which he apologized to Williams and stated that he was on drugs and did not remember the offense. Finally, the court noted that defendant had caused Williams to fear for his life during the crime. After concluding that defendant has exhibited an escalating pattern of violent behavior which is particularly disturbing in one

10

so young, the trial court imposed concurrent mid-range sentences of 50 years for armed robbery and 25 years for conspiracy to commit armed robbery.

The record shows that the trial court thoroughly reviewed and applied the appropriate sentencing factors. The court clearly considered defendant's youth, but balanced that factor against the severity of the offense and the pattern of violence exhibited by this young man. Based upon this record, the mid-range sentences imposed, although significant, do not shock the sense of justice. Thus, we cannot say the trial court abused its discretion in sentencing this defendant. The assignments of error lack merit.

*Assistance of Appellate Counsel*

Defendant contends in his pro se brief that he was denied effective assistance of counsel on appeal. Defendant argues that his appellate counsel was ineffective because counsel's brief contains incorrect dates and incorrectly names defendant as the victim, his brief refers to the denial of a motion for verdict of acquittal not supported by the record, and counsel failed to raise any meritorious claim on appeal despite a number of objections made at trial.

The right of a defendant in a criminal proceeding to the effective assistance of counsel is mandated by U.S. Constitutional Amendment VI. *State v. Wry*, 591 So. 2d 774 (La. App. 2 Cir. 1991). As a general rule, a claim of ineffective assistance of counsel should be raised in an application for post-conviction relief in the trial court so that a full evidentiary hearing may be held under La. C. Cr. P. art. 930. *State v. Spruell*, 52,575 (La. App. 2 Cir. 4/10/19), 268 So. 3d 397. When the record is sufficient, the claim may be resolved on direct appeal in the interest of judicial economy. *State v. Ratcliff*, 416 So. 2d 528 (La. 1982).

11

Under the well-known standard set out in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), and *State v. Washington*, 491 So. 2d 1337 (La. 1986), a conviction must be reversed if the petitioner proves (1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's inadequate performance prejudiced defendant to the extent that the trial was rendered unfair and the verdict suspect. *State ex rel. Sparkman v. State*, 2015-1726 (La. 10/17/16), 202 So. 3d 488; *State v. Legrand*, 2002–1462 (La. 12/3/03), 864 So.2d 89.

To be successful in arguing ineffective assistance of counsel, a post-conviction petitioner must prove deficient performance to the point that counsel is not functioning as counsel within the meaning of the Sixth Amendment. There is a strong presumption that counsel's performance is within the wide range of effective representation. Significantly, effective counsel does not mean errorless counsel. *State ex rel. Sparkman, supra*.

In reviewing claims of ineffective assistance of counsel on direct appeal, the Supreme Court of the United States has expressly observed that appellate counsel need not advance every argument, regardless of merit, urged by the defendant. *Evitts v. Lucey*, 469 U.S. 387, 105 S. Ct. 830, 83 L. Ed. 2d 821 (1985); *State ex rel. Sparkman*, *supra*. The courts give great deference to professional appellate strategy and applaud counsel for winnowing out weaker arguments on appeal and focusing on one central issue if possible, and at most a few key issues. This is true even where the weaker arguments have merit. *Jones v. Barnes*, 463 U.S. 745, 103 S. Ct. 3308, 77 L. Ed. 2d 987 (1983). When the claim of ineffective assistance of appellate counsel is based on the failure to raise an issue on appeal, the

prejudice prong of the *Strickland* test requires the petitioner to establish that the appellate court would have granted relief, had the issue been raised. *United States v. Phillips*, 210 F. 3d 345 (5th Cir. 2000).

The record on appeal is sufficient to dispose of defendant's claim that his appellate counsel was ineffective. The minor errors contained in appellate counsel's brief do not support an ineffective assistance claim. We note that the record demonstrates, as stated in appellate counsel's brief, that the trial court denied a defense motion for acquittal following the presentation of the state's case. In addition, appellate counsel urged an excessive sentence claim in his brief, emphasizing defendant's young age and other mitigating factors. In order to provide effective appellate representation, counsel was not required to assert any and all possible errors on appeal. Further, defendant has failed to establish that he would have been entitled to relief had any other alleged error been asserted on appeal. Thus, this assignment of error lacks merit.

We have reviewed the record for error patent and found none.

## CONCLUSION

For the foregoing reasons, the defendant's convictions and sentences are affirmed.

**CONVICTIONS AND SENTENCES AFFIRMED.**